# 25-1054(L), 25-1361(Con)

## United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

UNITED STATES DEPARTMENT OF TREASURY,

*Interested Party - Appellee,*

v.

MARTIN SHKRELI,

*Defendant,*

EVAN GREEBEL,

*Defendant – Appellant.*

On Appeal from the United States District Court
For the Eastern District of New York, No. 1:15-cr-00637-KAM

### OPENING BRIEF OF DEFENDANT-APPELLANT

Reed Brodsky
Akiva Shapiro
Marc Aaron Takagaki
*Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................................... 4

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................... 4

STATEMENT OF THE CASE................................................................................... 4

    I.    Statutory Background................................................................................... 4

    II.    Factual Background...................................................................................... 8

        A.    The Initial Garnishment Proceeding .......................................... 8

        B.    The First Appeal.......................................................................... 10

        C.    The Parties' Settlement ............................................................... 11

        D.    The District Court's First Order Rejecting the Parties'
            Settlement.................................................................................... 13

        E.    The District Court's Second Order Rejecting the Parties'
            Settlement.................................................................................... 16

        F.    The Emergency Stay ................................................................... 17

SUMMARY OF ARGUMENT ................................................................................... 17

STANDARD OF REVIEW ........................................................................................ 18

ARGUMENT ............................................................................................................. 19

    I.    The District Court Abused its Discretion in Rejecting the
        Parties' Proposed Settlement....................................................................... 19

        A.    The District Court Erred in Finding That the Mandate
            Rule Prevented the Court from Accepting The Proposed
            Settlement.................................................................................... 19

**TABLE OF CONTENTS** *(continued)*

<u>Page</u>

B. The District Court Improperly Interfered with the Executive Branch's Enforcement of the Restitution Order. ...................................................................22

C. The Parties' Settlement Was Fair and Reasonable. ..................23

II. In the Alternative, The District Court Erred in Ordering Garnishment That Ignored Mr. Greebel's Tax Liabilities. .................26

CONCLUSION...................................................................................34

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Daniel v. UnumProvident Corp.*,
261 F. App'x 316 (2d Cir. 2008) ........................................................................34

*Hayward v. IBI Armored Servs., Inc.*,
954 F.3d 573 (2d Cir. 2020) ..............................................................................19

*Kang v. Fyson*,
2022 WL 6943174 (9th Cir. Oct. 12, 202) .........................................................21

*Kang v. Wells Fargo Bank*,
2021 WL 5826230 (N.D. Cal. Dec. 8, 2021).......................................................21

*Litman v. Massachusetts Mut. Life Ins. Co.*,
825 F.2d 1506 (11th Cir. 1987) ..........................................................................20

*Lynch v. City of New York*,
589 F.3d 94 (2d Cir. 2009) ................................................................................18

*Madigan v. Bronstein*,
2018 WL 1768283 (S.D.N.Y. Apr. 12, 2018) ....................................................22

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
469 F. Supp. 836 (N.D. Ill. 1979), *aff'd*, 616 F.2d 1006 (7th Cir.
1980) ...................................................................................................................20

*New York v. Reebok Int'l Ltd.*,
903 F. Supp. 532 (S.D.N.Y. 1995) ....................................................................20

*Oscar Gruss & Son, Inc. v. Hollander*,
337 F.3d 186 (2d Cir. 2003) ..............................................................................19

*S.E.C. v. Wang*,
944 F.2d 80 (2d Cir. 1991) ................................................................................18

*In re Sept. 11 Prop. Damage Litig.*,
650 F.3d 145 (2d Cir. 2011) ..............................................................................19

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re Sumitomo Cooper Litig.*,
198 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................20

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*,
752 F.3d 285 (2d Cir. 2014) .............................................................................18

*United States of America v. Shkreli*,
47 F.4th 65 (2d Cir. 2022) ........................................................10, 27, 28, 33

*United States v. 110-118 Riverside Tenants Corp.*,
886 F.2d 514 (2d Cir. 1989) .............................................................................33

*United States v. Abell*,
435 F. Supp. 3d 299 (D. Mass. 2020).............................................................28

*United States v. Beulke*,
892 F. Supp. 2d 1176 (D.S.D. 2012) ..............................................................29

*United States v. Bradley*,
105 F.4th 26 (2d Cir. 2024) ..............................................................................19

*United States v. Frank*,
8 F. 4th 320 (4th Cir. 2021) .......................................................................30, 31

*United States v. Frank*, 2022 WL 528852, at *2 (E.D. Va. Feb. 22,
2022), *aff'd*, 2023 WL 1794153 (4th Cir. Feb. 7, 2023) ..............................31, 32

*United States v. Gonzalez*,
2022 WL 2441851 (M.D. Fla. June 16, 2022) ..................................................28

*United States v. Irving*,
452 F.3d 110 (2d Cir. 2006) .............................................................................33

*United States v. Jaffe*,
417 F.3d 259 (2d Cir. 2005) .............................................................................22

*United States v. Kolbusz*,
2023 WL 2161661 (N.D. Ill. Feb. 22, 2023) ..............................................28, 30

iv

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*United States v. Lawrence*,
 538 F. Supp. 2d 1188 (D.S.D. 2008) ...................................................................22

*United States v. Liounis*,
 2024 WL 3470592 (E.D.N.Y. July 19, 2024)......................................................22

*United States v. Marchand*,
 2017 WL 2857722 (M.D. Ala. May 4, 2017).......................................................23

*United States v. Novak*,
 476 F.3d 1041 (9th Cir. 2007) .............................................................................33

*United States v. Ryan*,
 2024 WL 618405 (N.D.N.Y. Feb. 14, 2024)........................................................28

*United States v. Sayyed*,
 862 F.3d 615, 619 (7th Cir. 2017) .......................................................................29

*United States v. Sayyed*,
 186 F. Supp. 3d 879 (N.D. Ill. 2016)...................................................................29

*United States v. Sterling Nat'l Bank*,
 494 F.2d 919 (2d Cir. 1974) ...............................................................................28

### Statutes

18 U.S.C. 3664(m)(1)(A)(i)-(ii)....................................................................5, 22

18 U.S.C. § 3205(a) ................................................................................5, 6

26 U.S.C. § 3405(c)(1)(B), (d)......................................7, 8, 11, 16, 27, 32

18 U.S.C § 3553A(d) ...................................................................................5

18 U.S.C. § 3613(a) .....................................................................................5

18 U.S.C. § 3663A(a)(1)...........................................................................4, 22

26 U.S.C. § 6342(a)(2)................................................................................33

28 U.S.C § 3013 .......................................................................................6, 22

## TABLE OF AUTHORITIES *(continued)*

Page(s)

28 U.S.C. § 3205(c)(1)-(5)................................................................................6

**Other Authorities**

15B Am. Jur. 2d Compromise and Settlement § 3 ...................................24

## INTRODUCTION

In a prior appeal, this Court held that the 401(k) accounts of Defendant-Appellant Evan Greebel were subject to garnishment and remanded to the District Court to consider whether the 10% additional tax for early 401(k) withdrawals under 26 U.S.C. § 72(t) would be triggered by the involuntarily liquidation of those accounts. The Court did not address—as the District Court had not yet resolved—whether the tax consequences of the garnishment would be paid from the garnished funds, as required by the weight of authority because the government steps into the defendant's shoes, or out-of-pocket by Mr. Greebel.

To resolve these open issues efficiently and eliminate litigation risk for all parties and the victim, Mr. Greebel and the Government agreed to a settlement. They did so after prolonged discussions and a thorough examination of the relevant law. The parties stipulated that the 401(k) plan administrators would withhold 40% of the funds subject to garnishment for the satisfaction of taxes associated with the garnishment, which is less than Mr. Greebel's effective income tax rate. Any funds that remained after Mr. Greebel's taxes had been paid would be remitted to the victim to partially satisfy Mr. Greebel's restitution. Any additional taxes owed would be borne by Mr. Greebel. Neither the victim in this case nor the garnishees opposed this arrangement.

1

Nevertheless, the District Court rejected the parties' stipulated settlement and directed the Government to submit garnishment orders that were insufficient to cover Mr. Greebel's tax liability generated by the garnishment. That was an error.

*First*, the District Court erred in rejecting the settlement for three reasons. (1) This Court's prior mandate to the District Court did not preclude the parties from resolving the full scope of disputed issues—that is, the case—through a stipulated settlement, as parties are free to do at any stage in litigation. The District Court adopted an erroneous view of the law in holding otherwise—the only grounds it provided for rejecting the settlement.

In addition, as a matter of separation of powers, the District Court had no authority to second-guess the Government's decision to settle with Mr. Greebel. The Executive Branch is vested with the authority to determine how to enforce a restitution order, and the Government in this case decided that a settlement would be in the best interests of the parties, the victim, and the courts. The District Court abused its discretion in overstepping the Executive's prerogative in this regard.

Settlements are, moreover, presumptively in the public interest because they amicably resolve disputes, provide finality to all parties, and preserve both the parties' and the courts' limited resources. The District Court made no finding that would overcome this presumption or otherwise justify rejecting the settlement. Mr.

2

Greebel therefore respectfully asks this Court to reverse the order below and instruct the District Court to enter the parties' stipulated settlement.

*Second*, in the alternative—that is, if this Court does not order the adoption of the settlement and instead reaches the merits—it should conclude that the District Court erred in directing the Government to submit garnishment orders that do not withhold sufficient funds to pay the *entire* tax consequences of the garnishment. When the Government garnishes a defendant's retirement account to pay restitution, the government steps into the defendant's shoes and acquires whatever rights and restrictions the defendant possesses—no more, no less. Here, because Mr. Greebel's property interest in the liquidated funds is limited by the tax liability generated by the garnishment, the Government's access to those funds is similarly limited. While this Court has not addressed this question, other courts have correctly held that the tax consequences of garnishment are paid with the garnished funds. Thus, in the alternative to directing entry of the parties' settlement, Mr. Greebel respectfully requests that this Court hold that the tax liability generated by the garnishment, including state and federal income tax, must be paid from the garnished funds.

3

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the underlying federal criminal case pursuant to 18 U.S.C. § 3231, and over the garnishment proceeding under 28 U.S.C. §§ 1345, 1355. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue One:** Did the District Court abuse its discretion in rejecting the settlement stipulation between the United States and Mr. Greebel deciding on an amount subject to garnishment?

**Issue Two**: In the alternative, when a criminal defendant's funds are garnished to satisfy a restitution order under the Mandatory Victim Restitution Act, must all tax liabilities generated by the garnishment be paid from the garnished funds?

## STATEMENT OF THE CASE

I.      **Statutory Background**

       1.      **Garnishment and Restitution**

The Mandatory Victims Restitution Act ("MVRA") provides, in relevant part:

> (a) (1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1). SA-7.

Under the MVRA, an order of restitution "may be enforced by the United States in the manner provided for" in the Federal Debt Collection Procedures Act ("FDCPA"). *See* 18 U.S.C § 3553A(d); 18 U.S.C. 3664(m)(1)(A)(i).

The FDCPA provides, in relevant part:

(a) ENFORCEMENT.—The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—(3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. § 1673) shall apply to enforcement of the judgment under Federal law or State law.

18 U.S.C. § 3613(a). SA-10.

The FDCPA provides for the garnishment of funds as a tool for collecting unpaid fines. It directs as follows:

(a) In General.— A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located. A court may issue simultaneous separate writs of garnishment to several garnishees. A writ of garnishment issued under this subsection shall be continuing and shall terminate only as provided in subsection (c)(10).

18 U.S.C. § 3205(a). SA-12.

5

When the government seeks to enforce a judgment through a garnishment, "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). SA-12. After the court issues a writ of garnishment, the garnishee shall file a written answer indicating what property it holds. *See* 28 U.S.C. § 3205(c)(1)-(4). SA-13. The judgment debtor "may file a written objection to the [garnishee's] answer and request a hearing." 28 U.S.C. § 3205(c)(5). SA-14.

Furthermore, the FDCPA provides district courts with discretion to protect debtors from any enforcement procedure:

> The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter.

28 U.S. Code § 3013. SA-16.

### 2. The Internal Revenue Code

26 U.S.C. § 72(t)(1) states, in relevant part:

> If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income. SA-34.

6

Certain provisions of Section 3405 of the Internal Revenue Code, titled "Special rules for pensions, annuities, and certain other deferred income," are relevant. SA-49. *First*, under 26 U.S.C. § 3405(c))(1)(B), when a 401(k) account is liquidated, the plan administrators must withhold 20% of the funds to pay taxes associated with the distribution. SA-60. *See id*. ("In the case of any designated distribution which is an eligible rollover distribution—the payor of such distribution shall withhold from such distribution an amount equal to 20 percent of such distribution.").

*Second*, 26 U.S.C. § 3405(d)(1-2) states:

(d) Liability for withholding.--

(1) In general.--Except as provided in paragraph (2), the payor of a designated distribution (as defined in subsection (e)(1)) shall withhold, and be liable for, payment of the tax required to be withheld under this section.

(1)    Plan administrator liable in certain cases.—

(A) In general.--In the case of any plan to which this paragraph applies, paragraph (1) shall not apply and the plan administrator shall withhold, and be liable for, payment of the tax unless the plan administrator—

(i) directs the payor to withhold such tax, and

(ii) provides the payor with such information as the Secretary may require by regulations.

SA-60.

7

In other words, the entity deemed the "payor"—which is sometimes the plan administrator—is responsible for Federal income tax obligations generated by a lump-sum pension distributions.

Here, the trust agreements between the 401(k) plan administrators and the garnishees provide that the garnishees are charged with withholding from any distribution a reasonable amount estimated to cover federal and state income taxes. A-660; A-698. Therefore, the garnishees could be viewed by the IRS as "payor[s]," as that term is used in 26 U.S.C. § 3405.

Notably, the obligations under the statutory sections above pair "liability" with "withholding." However, the statute does not clearly address whether liability remains with the garnishees – here, the 401(k) plan administrators and garnishees, and Mr. Greebel – if withholding is not performed. The Internal Revenue Service may make the determination that the liability for the tax still is owed by the garnishees even if the amount is not withheld, and the IRS may choose to seek such amount from either the garnishee or the 401(k) plan administrator.

## II. Factual Background

### A. The Initial Garnishment Proceeding

In August 2018, following a conviction for Conspiracy to Commit Wire Fraud and Conspiracy to Commit Securities Fraud, Mr. Greebel was ordered to pay $10,447,979,00 in restitution to his victim, Retrophin, Inc. (now known as Travere).

A-2. In November 2018, the Government initiated garnishment proceedings to garnish two of Mr. Greebel's 401(k) retirement accounts to partially satisfy his restitution order. A-3; A-18. To enforce the restitution order, the Government filed two applications for writs of garnishment against Mr. Greebel's interest in the two retirement accounts, pursuant to 28 U.S.C. § 3205(b). *Id.* One writ was directed to Charles Schwab and the other to Merrill Lynch (the "Garnishees"). *Id.* On November 19, 2019, the clerk of court approved the two writs. A-33; A-48.

On June 12, 2020, Mr. Greebel objected to the answers by Charles Schwab and Merrill Lynch on the basis that the Employee Retirement Income Security Act of 1974 and the Consumer Credit Protection Act (the "CCPA") limit the Government's right of access to his retirement accounts and therefore a portion of those funds were not subject to garnishment. A-63. As part of those objections, Mr. Greebel argued that tax implications affected his interests—and therefor the Government's – in the accounts. *See*, *e.g.*, A-76 ("[W]ere the [Government] to step into Mr. Greebel's shoes to withdraw the funds at issue for garnishment, Mr. Greebel may be required to pay taxes on those funds, which would be a massive tax burden … and would effectively increase Mr. Greebel's restitution beyond the amount mandated by the MVRA."); *see also* A-362 (citing Mr. Greebel's earlier objections that the "10% early withdrawal penalty negates a current unilateral right to the funds") (citaiton omitted).

9

On April 16, 2021, the District Court rejected Mr. Greebel's objections and ordered the garnishment of the accounts. A-236. Mr. Greebel timely appealed. A-254.

**B.     The First Appeal**

The parties addressed the issue of whether Mr. Greebel's property interest in his retirement accounts is limited by the tax liability generated by the garnishment of those funds. *United States v. Shkreli*, 47 F.4th 65, 68 (2d Cir. 2022); A-290. On August 24, 2022, this Court issued an opinion concluding that the Government could garnish Mr. Greebel's retirement accounts but remanded to the District Court to consider two questions: (1) "whether Greebel would be subject to the [10%] early withdrawal tax upon seizure of funds by the Government," and (2) "what property interest remains in Greebel's retirement accounts." *Shkreli*, 47 F.4th at 68; A-290. The Court "reiterate[d] that the Government, in seeking garnishment to enforce restitution under the MVRA, steps into the defendant's shoes, acquiring whatever rights the defendant himself possesses to the balance of the 401(k) accounts," which "may be limited" by taxes resulting from the withdrawal. *Shkreli*, 47 F.4th at 68; A-290.

On December 21, 2022, Mr. Greebel petitioned the United States Supreme Court for a writ of certiorari on the quesiton of whether lump-sum compensatory payments to an individual, such as those made pursuant to a retirement plan, qualify

10

as "earnings" subject to the CCPA's garnishment limitations.[1]  A-314.  Mr. Greebel asserted that despite the interlocurtory posture and depite the fact that the District Court had not issued a final order, deciding the meaning of "earnings" under the CCPA was a necessary first step for the future computation of taxes, since any tax implications hinge on the amounts garnished.  The Supreme Court denied certiorari and the District Court ordered the parties to file their responses to the Mandate.  *Id.*

### C.     The Parties' Settlement

After the Supreme Court denied certiorari, Mr. Greebel and the Government engaged in "considerable negotiation" and "extensive consideration" of how taxation associated with the garnishment would affect Mr. Greebel's—and therefore the Government's—property interest in the garnished funds.  A-373 at 377. Specifically, the parties considered, *inter alia*: (1) the statutory requirement in 26 U.S.C. § 3405(c)(1)(B) that 20% of 401(k) distributions be withheld to pay federal income tax; and (2) federal caselaw stating that, for restitution-based garnishment, taxes associated with a garnishment should be paid using the garnished funds rather than paid out of pocket by the defendant.  A-373; A-355 at 356–57.  The parties jointly requested, and the District Court granted, multiple extensions of time

---

[1]  Had the lump sum payment qualified as "earnings" that were paid as compensation for services rendered, then the only 25% of the funds could be garnished under the CCPA.

11

to continue discussing and finalizing a potential resolution of these issues. A-314; A-315; A-316; A-318; A-319; A-320; A-321; A-322; A-324; A-326; A-327.

On January 31, 2025, the Government informed the District Court that the parties had reached a settlement. A-329. The parties' stipulation and orders of garnishment provided that the plan administrators would withhold 40% of the funds for the satisfaction of taxes associated with the garnishment, which is less than Mr. Greebel's effective income tax rate. Specifically, the plan administrators would "pay to the [IRS] on behalf of Evan Greebel, thirty-one percent [] of the Cash Surrender Value of" the retirement plan funds and "further pay to the New York State Department of Taxation and Finance [] on behalf of Evan Greebel, nine percent." A-331 at 335–36; A-339 at 343–44. The settlement stipulation also included an explicit proviso providing Mr. Greebel with recourse in the event the early 10% withdrawal penalty is assessed by the IRS. A-331 at 337; A-339 at 345 ("Evan Greebel expressly reserves his rights [] to challenge in … any court with the jurisdiction to hear such challenges [] the imposition of any penalty for early withdrawal, including a 10% penalty or additional tax, pursuant to 26 U.S.C. § 72(t).").[2]

---

[2] Despite the District Court's request that the Parties "research and determine whether the ten-percent early withdrawal [penalty] will apply," SA-1 at 3, the Government has represented to this Court as well as counsel for Mr. Greebel that the Government cannot speak for the IRS and that the determination of whether

12

**D.      The District Court's First Order Rejecting the Parties' Settlement**

On February 21, 2025, the District Court rejected the parties' settlement.  A-347.  In explaining its decision, the District Court stated that the parties "fail[ed] to clarify whether Mr. Greebel will be subject to the ten-percent early withdrawal tax" and that, in the District Court's view, the parties "provide[d] insufficient factual and legal support for their proposal in the context of post-judgment garnishment by the Government to enforce" restitution.  *Id*. at 350–51.  The District Court also determined that the proposed stipulations and orders of garnishment exceeded this Court's mandate in connection with its resolution of the prior appeal.  *Id*. at 352.  The District Court instead ordered that the entirety of the 401(k) accounts be liquidated and deposited with the District Court clerk.  The District Court then directed the Government to submit new writs of garnishment that liquidate the entirety of the accounts.  *Id*. at 353.

In response to the February 21, 2025 order, the Government asked the District Court to hold a conference to allow the parties to address the factual and legal support underpinning the settlement.  A-751.  In a text order issued the same day, the District Court suspended the Government's deadline to submit revised

---

the 10% withdrawal tax applies is "ultimately academic" to this proceeding.  A-373 at 374.

13

garnishment orders and asked to hear from all parties involved, including from the Garnishees and the victim, Travere. A-753.

The Government, Mr. Greebel, the victim, and the Garnishees each filed letters regarding the settlement. A-355; A-364; A-369; A-373. The Government's submission supporting the settlement explained that it was a result of "considerable negotiations with Greebel's counsel and extensive consideration of the relevant precedent" regarding tax liabilities associated with the garnishment of 401(k) accounts. A-373 at 377. Mr. Greebel's submission similarly explained the reasoning behind the parties' decision to settle, which included eliminating litigation risk for all parties regarding Mr. Greebel's tax liabilities, and conserving the parties' and the judicial resources. A-355 at 356–57; A-373 at 377–78. For the Government and the victim, there was a risk that the District Court, an appellate court, a state or federal tax authority, or a tax court could find that the 401(k) funds should be used to pay for the entirety of the tax liabilities associated with garnishment. A-373 at 377–78. For Mr. Greebel, there was the risk that he must personally pay approximately $1 million in taxes out of pocket. A-355 at 356.

For its part, Travere noted that "the forced liquidation of [Mr. Greebel's] retirement accounts could result in Mr. Greebel himself having to pay substantial out of pocket taxes or penalties." A-364. Accordingly, Travere "d[id] not object to the proposed settlement insofar as it was reached in order to avoid (i) Mr. Greebel owing

14

taxes or penalties occasioned exclusively by the liquidation of his accounts; and/or (ii) the Garnishees owing taxes or penalties for the same reason." *Id.* Travere also proposed edits to the stipulation to ensure that any possible excess in the funds reserved for taxes would be redirected to Travere after the satisfaction of Mr. Greebel's tax liabilities. *Id.* at 365.[3]

Finally, the Garnishees also did not object to the settlement, A-366; A-369, with Garnishee Schwab requesting that the any future order issued by the District Court directing turnover of funds "contain language *expressly requiring that Schwab reserve and deduct withholdings for applicable federal and state income taxes* before turning over the remainder of the funds in satisfaction of the garnishment," A-369 at 372. (emphasis added). Mr. Greebel's letter to the District Court also explained that the entirety of the tax obligations associated with the garnishment should be paid from the garnished funds. A-355 at 359–60.

---

[3] The stipulations and orders of garnishment originally submitted to the District Court on January 31, 2025 already contained a provision that "[i]n the event that Evan Greebel receives a net refund … from his federal and state taxes … he shall, pay or cause to be paid said net refund amount to the Clerk of the Court in further partial satisfaction of his outstanding restitution balance." A-331 at 336; A-339 at 344.

### E. The District Court's Second Order Rejecting the Parties' Settlement

On April 10, 2025, the District Court again rejected the parties' settlement on the basis that the settlement stipulations, which were intended to resolve what the tax implications of the garnishment would be, did not address the early withdrawal tax. SA-1 (the "April 10 Order"). The April 10 Order also stated that "[t]he Second Circuit decision discussed and remanded only to determine the potential ten-percent early withdrawal tax and not Mr. Greebel's other potential federal and state tax liabilities," suggesting that in the District Court's view the parties did not have the right to fully settle the case. *Id*. at 3. The District Court did not address the parties' arguments regarding the income tax implications of the garnishment or their effect on the Government's property interests in the 401(k) accounts. *Id*.

Nevertheless, the District Court ordered the Government to file revised garnishment orders that set aside 20% of the funds pursuant to 26 U.S.C. § 3405(c)(1)(B) and place 10% of the remaining funds in escrow to be used only in the event the IRS imposed a tax for early withdrawal. *Id*. at 5. The District Court ordered that the remaining 70% would be held by the Clerk of Court until the District Court ordered distribution to the victim. *Id*. at 5–6. The April 10 Order acknowledged that Mr. Greebel's garnishable property interest was indeed limited by taxes but ignored Mr. Greebel's argument, supported by caselaw, that all state and federal taxes should be paid out of the liquidated funds.

16

## F.      The Emergency Stay

On April 24, 2025, Mr. Greebel timely appealed the April 10 Order.  A-382.

On May 2, 2025, Mr. Greebel filed a letter motion for a stay, to which the

Government consented, asking the District Court to stay the portion of its April 10

Order stating that "[t]he Court will order the Clerk of Court to distribute the

remainder [of the funds] to Mr. Greebel's victim."  A-485.  On May 23, 2025, the

District Court denied Mr. Greebel's request.  A-486 (the "May 23 Order").

On May 27, 2025, Mr. Greebel filed a notice of appeal of the District Court's

May 23 Order, which this Court consolidated with Mr. Greebel's earlier April 24,

2025 appeal.  A-757.  Mr. Greebel thereafter filed an application for an emergency

stay regarding the May 23 Order, which the Government did not oppose.  A-499.

This Court issued an emergency stay on June 2, 2025, and later extended that stay

on June 9, 2025 pending review by a full panel. A-858.

## SUMMARY OF ARGUMENT

The District Court abused its discretion in rejecting the parties' settlement,

which would have resolved the dispute between the parties over the distribution of

Mr. Grebeel's 401(k) accounts following garnishment.  The Court did so based on

an erroneous view of the law, as this Court's mandate did not preclude the parties

from settling their full range of disputes, which they are free to do at any stage of

litigation.  Moreover, the District Court exceeded its authority in overriding the

17

Government's determination to settle with Mr. Greebel, as the Executive Branch is vested with exclusive authority to enforce restitution orders.

After preventing the parties from resolving these issues on their own, the District Court further erred in directing the Government to submit garnishment orders that do not withhold sufficient funds to pay the tax consequences of the garnishment. In addition, because Mr. Greebel's property interest in the liquidated funds is limited by the tax liability generated by the garnishment, the Government's access to those funds is similarly limited. Accordingly, as a matter of law, Mr. Greebel is not responsible for any out-of-pocket tax consequences of the garnishment, including state and federal income taxes. The District Court erred in directing the submission of garnishment orders that unlawfully impose these liabilities on him.

## STANDARD OF REVIEW

A district court's denial of a settlement agreement is reviewed for abuse of discretion. *See S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991). "A district court abuses its discretion if it '(1) based its ruling on an erroneous view of the law,' (2) made a 'clearly erroneous assessment of the evidence,' or (3) 'rendered a decision that cannot be located within the range of permissible decisions.'" *U.S.S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 291 (2d Cir. 2014) (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)). Thus, "an error of law generally is

18

considered an abuse of discretion." *United States v. Bradley*, 105 F.4th 26, 33 (2d Cir. 2024) (quoting *In re Kandekore*, 460 F.3d 276, 278 (2d Cir. 2006)).

On appeal, a district court's "factual conclusions under the 'clearly erroneous' standard, and its legal conclusions *de novo*." *In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 151 (2d Cir. 2011) (citation omitted); *see also Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 (2d Cir. 2020) (per curium) (reviewing issues of statutory interpretation *de novo*); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198-99 (2d Cir. 2003) (same for interpretation of a contract).

## ARGUMENT

## I. The District Court Abused its Discretion in Rejecting the Parties' Proposed Settlement.

The District Court had no legitimate basis for rejecting the parties' settlement, which would have resolved the underlying issues presented in this appeal. Moreover, the District Court lacked the authority to second-guess the Government's enforcement of a restitution order by preventing it from entering into a settlement with Mr. Greebel.

### A. The District Court Erred in Finding That the Mandate Rule Prevented the Court from Accepting The Proposed Settlement.

In its order rejecting the settlement, the District Court found that "the proposed stipulations and orders of garnishment exceed the scope of the Second Circuit's Mandate" because this Court "remanded only to determine the potential

19

ten-percent early withdrawal tax and not Mr. Greebel's other potential federal and state tax liabilities." SA-1 at 3. To the extent the District Court refused to accept the Parties' proposed settlement as a result, that was legal error.

It is well established that parties are free to enter settlement agreements at any time during a litigation, including following a remand from a court of appeals. *See, e.g.*, *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1514 (11th Cir. 1987) (in considering whether a district court's actions following a prior remand violated the mandate rule, the Eleventh Circuit clarified that its mandate must be followed "unless a settlement was negotiated between the parties or the mandate was modified by the court of appeals"); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 469 F. Supp. 836, 849-850 (N.D. Ill. 1979), *aff'd*, 616 F.2d 1006 (7th Cir. 1980) (following remand with specific instructions regarding a three-step procedure the district court was to follow, the district court instead approved a consent decree as "[a]ny settlement of this litigation" is "clearly consistent with the decision of that court"). This is true so long as "the settlement was the result of good-faith bargaining at arms-length by experienced counsel" and there was no "evidence of collusion." *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999); *see also New York v. Reebok Int'l Ltd.*, 903 F.Supp. 532, 535 (S.D.N.Y. 1995) (explaining that settlement agreements between state attorneys general and shoe manufacturer can be presumed fair if they are the result of good faith arms-length

20

negotiations and the court sees no indications of collusion). Here, the settlement was indisputably the product of extensive, good-faith, non-collusive, arms-length bargaining between experienced counsel. *See supra* pp. 12–13. The District Court made no contrary findings, nor could it have.

In *Kang v. Wells Fargo Bank*, the Ninth Circuit remanded to the district court with instructions to order Wells Fargo to pay $24,472,114.36 and to stay the remaining $72,812,703.55 in potential stipulated damages pending a decision by the California Supreme Court. 2021 WL 5826230, at *6 (N.D. Cal. Dec. 8, 2021). Before the California Supreme Court issued its order, the parties reached a proposed class action settlement. *Id.* at *3–6. In overruling objections to the proposed settlement, the district court explained that "parties to litigation remain free to settle their disputes after remand, and that such settlement is not barred by the mandate rule." *Id.* at *7. The district court approved the settlement, *id.* at *18, and the Ninth Circuit affirmed. *See Kang v. Fyson*, 2022 WL 6943174, at *2 (9th Cir. Oct. 12, 202) ("the district court's approval of the settlement did not violate our mandate"). So too here: nothing in this Court's order "precluded the parties from reaching a settlement or the district court from approving a settlement." *Id.*

The District Court should have accepted the parties' decision to agree on the specific garnishment amounts and finally and completely resolve this dispute in the manner that they believe and understand is in their best interests.

21

**B.      The District Court Improperly Interfered with the Executive Branch's Enforcement of the Restitution Order.**

By rejecting the proposed settlement and directing the Government to submit a substantially different garnishment order, the District Court improperly interfered with the Executive Branch's enforcement of the restitution order issued in this case. Although courts are empowered to order restitution, 18 U.S.C. § 3663A(a)(1), only a victim, or the government acting on behalf of a victim, may determine how best to collect on that restitution order, *see* 18 U.S.C. § 3664(m)(1)(A)(i)–(ii).  The MVRA "authorizes the government or the victim to enforce a restitution order through a series of specific means including 'all other available and reasonable means.'" *United States v. Jaffe*, 417 F.3d 259, 265-66 (2d Cir. 2005).  Indeed, the Government is afforded a "robust panoply of enforcement options."  *Madigan v. Bronstein*, 2018 WL 1768283, at *2 (S.D.N.Y. Apr. 12, 2018).  The MVRA does not contemplate a role for the judicial branch to second-guess the Government's exercise of its discretionary authority in making enforcement determinations, and in doing so the District Court exceeded its authority.[4]

---

[4] Similarly, the FDCPA, which provides the enforcement mechanism for restitution orders, *see United States v. Liounis*, 2024 WL 3470592, at *2 (E.D.N.Y. July 19, 2024), only allows the District Court to *limit* the Government's restitution enforcement tools.  28 U.S.C. § 3205 provides the process by which a District Court "may issue a writ of garnishment," and 28 U.S.C. § 3013 grants the Court "discretion to limit the Government's enforcement remedies." *United States v. Lawrence*, 538 F. Supp. 2d 1188, 1195 (D.S.D. 2008) (citation omitted).  The FDCPA "provides a

Here, the Government decided that a settlement with Mr. Greebel was the best path to enforcing the restitution order in this case, A-329 at 377—and the victim agreed, A-364 at 364–65. As the Government explained to the District Court, "the Proposed Garnishment Orders here eliminate any further appeals or motions for reconsideration of any of the underlying decisions" resulting in Travere receiving 60% of the balance of funds sooner than it otherwise would "if additional appeals were to result from a litigated resolution of this garnishment dispute, or if funds were directed to be held by the Clerk until Greebel's actual tax obligation was determined, either of which could take years." *Id*. The District Court did not have the authority to veto the Government's decision to settle, nor did it provide any justification for doing so.

## C. The Parties' Settlement Was Fair and Reasonable.

Even if the District Court had the authority to second-guess the Executive's decision to settle the matter—and it did not—it was an abuse of discretion for the court to reject the parties' extensively negotiated and fair settlement agreement here.

---

defendant with a layer of protection against abuse or potential abuse by the Government." *Id.*; *see also United States v. Marchand*, 2017 WL 2857722, at *3 (M.D. Ala. May 4, 2017) (finding that "courts have held that this section 'authorizes district courts to shield defendants from efforts to collect restitution judgments if the collection would cause unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice.'") (citation omitted).

23

Equity presumptively favors negotiated resolutions, which among other benefits provide certainty, saves litigation costs, and relieves the overburdened courts of the need to continue to expend limited resources adjudicating disputes. *See, e.g.*, 15B Am. Jur. 2d Compromise and Settlement § 3 ("[T]he law and public policy favor and encourage compromises and settlements as a means of resolving uncertainties and discouraging lawsuits" as they "simplify litigation without taking up valuable court resources, and reduce the burden on the courts."). The parties' settlement provided all these benefits. The District Court made no contrary finding—nor could it have.

As discussed below, *see infra* Section II, Mr. Greebel maintains that the entire tax liability associated with the garnishment should be paid with the liquidated funds.[5] The Government's contrary view that only 20% should be paid using the funds, however, created significant litigation risk for both parties and uncertainty for the victim. *See* A-373 at 377–78. The proposed settlement eliminates this risk and provides finality. *Id.* After five years of litigation regarding garnishment, the Government and the courts would avoid further expenditures of time and resources on this garnishment order, Mr. Greebel would avoid the risk of any claw backs of

---

[5] For the avoidance of doubt, Mr. Greebel raised the issue of the tax liability in his objections to the answers of the Garnishees. A-63 at 76 n.10; *see also* A-260 at 279–82 (remanding Mr. Greebel's prior appeal for consideration of the ten-percent additional early withdrawal tax).

24

funds to fulfill the resulting tax liabilities, and the victim would receive restitution now, rather than years down the line pending further judicial decisions.

For those reasons, all relevant parties—Mr. Greebel, the Government, Travere (the victim), and the Garnishees (Merrill Lynch and Chrales Schwab)—either supported or did not oppose the settlement. *See* A-355, A-364, A-366, A-368, A-369, and A-373. The Government described it as a "fair and reasonable settlement of the disputed issues in this case" that "eliminate[s] any further appeals or motions for reconsideration of any of the underlying decisions in this action." A-373 at 378. Travere wrote that it "does not object to the proposed settlement insofar as it was reached in order to avoid (i) Mr. Greebel owing taxes or penalties occasioned exclusively by the liquidation of his accounts; and/or (ii) the garnishees owing taxes or penalties for the same reason" and that it had no objections to the settlement framework. A-364 at 364–65. Garnishee Schwab expressly requested that the District Court issue an order directing ***all*** of Mr. Greebel's taxes—both state and federal—be paid using the garnished funds: "Schwab respectfully requests that any order issued by the Court directing turnover of funds from Mr. Greebel's Account . . . expressly requir[e] that Schwab reserve and deduct withholdings for applicable federal and state income taxes before turning over the remainder of the funds in satisfaction of the garnishment." A-369 at 372.

25

The proposed settlement thus provided benefits to all parties—and the District Court did not find otherwise.  In fact, the District Court provided no basis or justification whatsoever for rejecting the parties' proposed Settlement Agreement based on its substance.  The District Court faulted the parties for failing to provide "[]sufficient factual and legal support for their proposal in the context of post-judgement garnishment," A-347 at 351, but then proceeded to ignore those same factual and legal authorities when the parties presented them in their March submissions in direct response to the District Court's request for additional information.  SA-1 at 5–6.

Furthermore, the District Court did not conduct any kind of evidentiary hearing or otherwise have any reason to cast aside the parties' representations as to the benefits of the settlement.  Nor did the District Court issue any findings of fact or law rejecting the benefits of the settlement that the Government, Mr. Greebel, and Travere explained in their March submissions.  There was no basis in the record supporting the decision to reject the settlement.  This was an abuse of discretion.

## II.    In the Alternative, The District Court Erred in Ordering Garnishment That Ignored Mr. Greebel's Tax Liabilities.

Should the Court conclude that the District Court did not abuse its discretion in rejecting the parties' settlement, this Court should reach the underlying merits to hold all tax liability generated from the garnishments should be paid from the

26

garnished funds.[6] Should the Court rule against Mr. Greebel on this issue as well, Mr. Greebel reasserts his arguments that lump-sum compensatory payments to an individual, such as those made pursuant to Mr. Greebel's 401(k) plans, qualify as "earnings" subject to the CCPA's garnishment limitations. This Court resolved these issues in the government's favor, *see Shkreli*, 47 F.4th at 77, and the Supreme Court denied certiorari. A-314. As this case is no longer in an interlocutory posture, Mr. Greebel therefore expressly renews these arguments now to preserve them for a future petition for certiorari.

In its April 10 Order, the District Court ordered the Government to revise its proposed garnishment orders to have 20% of the funds of the liquidated accounts withheld, pursuant to 26 U.S.C. § 3405(c)(1)(B), and 10% of the liquidated funds held "in escrow for the potential additional tax consequences of the early withdrawal." SA-1 at 5. In ordering a distribution that did not include all of Mr. Greebel's tax obligations generated by the garnishment, the District Court ignored the weight of legal authority and the text of the 401(k) plans. This was error.

---

[6] In the event the Court does not order the entry of the settlement agreement, Mr. Greebel does not object to the District Court's finding that 10% of the funds should be kept in escrow. Mr. Greebel respectfully requests, however, that the Second Circuit instruct the District Court to reserve 10% of the **aggregate** of the funds, and not 10% of the funds after the garnishees pay 20% to the IRS pursuant to 26 U.S.C. § 3405(c))(1)(B).

Under the MVRA, the government "steps into the defendant's shoes" when garnishing a retirement account to enforce restitution. *Shkreli*, 47 F.4th at 68. In acquiring the defendant's interest in a retirement account, "the government can stand in no better position than [he] whose property or right to property is being levied upon." *United States v. Sterling Nat'l Bank*, 494 F.2d 919, 922 (2d Cir. 1974). "It follows that any . . . tax implications would qualify as a limit on [defendant's] right to access his funds, and thus as a parallel limit on the government's right of access." *United States v. Kolbusz*, 2023 WL 2161661, at *9 (N.D. Ill. Feb. 22, 2023) (internal quotation marks omitted); *see also United States v. Ryan*, 2024 WL 618405, at *7 n.2 (N.D.N.Y. Feb. 14, 2024) (noting government's position that "income tax withholdings" triggered by the turnover of funds would count as "deductions required by law").

Although this Court has not addressed this question, other courts routinely require liquidation orders to include tax withholdings sufficient to cover state and federal taxes associated with the garnishment. *See, e.g., United States v. Gonzalez*, 2022 WL 2441851, at *2 (M.D. Fla. June 16, 2022) (ordering garnishee to liquidate IRA, "withhold and pay appropriate taxes," and to pay balance for restitution despite defendant's failure to contest the garnishment); *United States v. Abell*, 435 F. Supp. 3d 299, 301 (D. Mass. 2020) (ordering "that payments of any tax and/or penalties resulting from the withdrawal of said funds to be paid directly from the funds prior

28

to the balance being paid to the clerk"); *United States v. Beulke*, 892 F. Supp. 2d 1176, 1185 n.2 (D.S.D. 2012) (ordering "the net proceeds from the 401(k) account" to be applied to restitution payment after noting "net" refers to proceeds after "withholdings … for taxes").

In *United States v. Sayyed*, for example, the court approved of the government structuring the turnover orders to minimize the tax consequences of the proposed liquidation, 186 F.Supp.3d 879, 883-84 (N.D. Ill. 2016), and entered orders that withheld 30% of the liquidated funds to satisfy the entirety of the defendant's tax liability, *see* Turnover Order, *United States v. Sayyed*, No. 1:11-cr-00625, Dkts. 183–84 (N.D. Ill. 2019), in accordance with the Seventh Circuit's opinion, 862 F.3d 615, 619 (7th Cir. 2017) ("[S]tepping into his shoes, the government may clearly access his [] funds, subject to the tax penalties faced by Sayyed.").

Subsequent cases have made clear that "[a]ny tax liability will be withheld from the [liquidated] amounts used to partially satisfy the restitution order, while the withheld amount will be used to satisfy the tax liability." *O'Brien*, 2023 WL 3652624 at *3. In *O'Brien*, the defendant similarly raised concerns about the tax implications of the government's liquidation of her retirement accounts. Citing *Sayyed*, the court ordered the government to "structure the liquidation and turnover to cover O'Brien's tax liability" and emphasized that "there will be no out of pocket cash consequence to O'Brien." *Id*. The court later signed a turnover order requiring

29

the clerk of court to withhold 30% of the liquidated funds for the defendant's tax liability. *United States v. O'Brien*, No. 1:17-cr-00239-1, Dkt. 397 (N.D. Ill. 2023).[7]

Similarly, in *United States v. Kolbusz*, the court agreed with the defendant that "taxes should be withheld from distribution to the Government to account for any tax liabilities resulting from the withdrawals." *Kolbusz*, 2023 WL 2161661 at *9. The court noted that any federal or state tax implications that would limit a defendant's right to access the funds serve as a "parallel limit on the Government's right of access." *Id*. (cleaned up). The court directed the administrators of the retirement plan "to provide the Court and the parties with a signed statement reflecting the calculation, to their best estimate, of the amount they anticipate will be withheld from any disbursement of defendant's funds to cover defendant's federal or state tax liabilities," with the "[t]he remainder of the funds" to be "turned over to the Government." *Id*.

The court in *Kolbusz* relied in part on the Fourth Circuit's decision in *United States v. Frank*, 8 F. 4th 320 (4th Cir. 2021). In *Frank*, the Fourth Circuit remanded so the district court could determine the tax implications of garnishing the

---

[7] In both *Sayyed* and *O'Brien*, the total value of the retirement accounts at issue was approximately $40,000. Although 30% of those funds might have been adequate to cover the tax obligations in those cases, the value of Mr. Greebel's retirement accounts is significantly higher, resulting in a higher taxation rate. Accordingly, a larger percentage of Mr. Greebel's garnished funds will need to be withheld to address the tax liability.

defendant's 401(k) account. 8 F.4th at 331-33. Following remand, the government offered to settle by agreeing to take only 80% of the 401(k) and leaving the remaining 20% to be used for taxes. The defendant rejected the offer as insufficient because the account administrator could be obligated to withhold 5%-6% for state income taxes in addition to 20% for federal income taxes. *United States v. Frank*, 2022 WL 528852, at *2 (E.D. Va. Feb. 22, 2022), *aff'd*, 2023 WL 1794153 (4th Cir. Feb. 7, 2023) (citations omitted). The court then ordered the administrator of the 401(k) account to provide a calculation of the amount needed to cover the federal and state taxes. 2022 WL 528852, at *4.

The foregoing precedents informed both the Government's and Mr. Greebel's view of the issue during negotiations. *See* A-373 at 377 ("[W]e settled on the proposed 40% amount after considerable negotiations with Greebel's counsel and extensive consideration of the relevant precedent," namely, *Frank* and *Sayyed*); A-355 at A-359 ("a defendant should not have to personally pay any of the tax consequences associated with the garnishment") (emphasis in original).

Consistent with this caselaw, Garnishee Schwab asked the District Court to order "that Schwab reserve and deduct withholdings for applicable federal and state income taxes before turning over the remainder of the funds in satisfaction of the garnishment." A-369 at 372. Schwab noted that standard practice has been that pension plans and the United States Attorney confer regarding tax withholding

31

amounts when garnishments arise "in situations such as this case." *Id.* at 371. The Katten Plan gives Schwab the "sole discretion" to deduct "such amount" proper to protect the funds "against liability for the payment of [] income or other taxes." A-373 at 376; *see also* A-369 at 370 ("Schwab may, in its discretion and to the extent required under applicable law, withhold from any distribution a reasonable amount estimated to cover federal and state income taxes" absent direction from the plan administrator).

The District Court's Order itself apparently recognizes the principle that taxes associated with the garnishment constitute a limit on Mr. Greebel's interest in the retirement accounts. This is evidenced by the fact that the District Court ordered 10% of the funds to be put in escrow in the event the IRS assesses an early withdrawal penalty—in addition to the 20% withheld to pay taxes associated with the garnishment required by 26 U.S.C. § 3405(c)(1)(B). SA-1 at 5.[8] Nevertheless, the District Court failed to order that the plan administrators' tax withholding be sufficient to pay the entirety of the taxes associated with the garnishment. In so doing, the District Court ignored Mr. Greebel's argument and the caselaw he cites.

---

[8] This mandatory 20% withholding is a mandatory minimum "estimate, and in fact, a different percentage may be withheld at the [Garnishee's] discretion." *Frank*, 2022 WL 528852, at *3-4. Given that Mr. Greebel's liquidation will put him in the highest state and federal tax brackets, see A-373 at 377 n.6, 20% will not suffice to cover all of his tax obligations.

In addition to existing caselaw on this issue, tax levy proceedings provide an instructive analog to the present garnishment proceedings. *See United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (finding that it "significant" that Congress "import[ed] the tax levy language into the restitution order enforcement statute"); *Shkreli*, 47 F.4th at 72–73 (noting that MVRA restitution orders are enforced in the same manner as tax levies); *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006) (same). When assets are sold to satisfy a tax levy, the taxes generated from the sale are paid out from the proceeds *before* the proceeds are applied to the debt. *See* 26 U.S.C. § 6342(a)(2) ("If the property seized and sold is subject to a tax imposed by any internal revenue law which has not been paid, the amount remaining after applying [the proceeds to the expenses of the proceedings] shall then be applied against such tax liability (and, if such tax was not previously assessed, it shall then be assessed)."); *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 521 (2d Cir. 1989) (ordering that attorneys' fees and property tax associated with corporation's sale be paid out from sale proceeds because they were "fees and expenses which would be charged to the Government if it had foreclosed its own lien and sold the shares of stock"). Given the clear authority explaining that the MVRA restitution orders are enforced in the same manner as tax levies, this Court should hold that taxes associated with the garnishment of Mr.

33

Greebel's retirement accounts should similarly be paid prior to distributing the proceeds.

Finally, as discussed above, the plan documents themselves require the Government to account for Mr. Greebel's tax liabilities. The Katten plan states that that the fiduciary should first "deduct from the amount to be distributed such amount" proper to protect the funds "against liability for the payment of [] income or other taxes" prior to making any distributions. A-79 at 155. The District Court's refusal to even consider the applicability and the language of the contracts bearing on this dispute constitutes an abuse of discretion. *See Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) (holding that a "district court abuse[s] its discretion in declining to consider" relevant contractual agreements bearing on the parties' dispute).

Accordingly, any taxes assessed as a result of the Government's garnishment of Mr. Greebel's retirement accounts should be paid out from the liquidated proceedings.

## CONCLUSION

For the foregoing reasons, Mr. Greebel respectfully asks this Court to vacate the District Court's April 10 Order and remand with an instruction to the District Court to so-order the stipulated settlement of the Parties at ECF Nos. 803-1 and 803-2. In the alternative, this Court should reach the merits and hold that the entirety of

Mr. Greebel's tax liabilities resulting from the garnishment should be paid from the garnished funds. Mr. Greebel also expressly renews the arguments he raised before the United States Supreme Court regarding whether the CCPA acts to cap the amount subject to garnishment in this case.

DATE: August 12, 2025        Respectfully submitted,

<u>/s/ Reed Brodsky</u>

Reed Brodsky

Akiva Shapiro
Marc Aaron Takagaki
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Local Rule 32.1(a)(4)(A) because, including text in images and excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 9130 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word365 in 14-point Times New Roman font.

DATE: August 12, 2025                     */s/ Reed Brodsky*

Reed Brodsky

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000